The judges having conferred together on this cause during the vacation, the chief justice drew up the result; and being detained from attending at this term by bodily indisposition, transmitted that result to his brethren here, * which was now pronounced by Parker, J., as follows; the parties expressing a strong desire for the decision of the cause, and Sedgwick, J., sitting pro forma, having been of counsel in the original action.
The plaintiffs, as the children and heirs of Moses Haivley, have sued this writ, to reverse a judgment rendered against their ancestor at the term of this court holden in this county in May, 1792. The judgment was rendered upon a writ of entry sur disseisin, sued by the said Moses, in which he counted upon his own seisin in fee, and on a disseisin committed by the defendants in their corporate capacity. The writ demanded eight several parcels of land, and one third part in common of five other parcels of land, formerly the estate of Ebenezer Hawley, deceased. On a trial upon the general issue, the jury found a special verdict, on which judgment was rendered for the defendants.
On inspecting the record, it appeared to the court that the defendants derived their title under a devise from Joseph Hawley, who, as they argued,-had been seised in fee tail, and had suffered a common recovery to his own use in fee; but the verdict did not find that the recovery had been executed. On mentioning this defect, the defendant’s counsel produced a record of the execution of the recovery; and thereupon the court recommended to the parties to adopt some method by which the execution might appear on record as a fact found.
This recommendation was made on the authority of the case of Witham vs. Lewis. (69) In this case it was holden by the highest judicial authority, that no uses were raised by the suffering of a *35 common recovery, unless the same was executed ; and that the uses arose from the execution.
The parties, therefore, desirous to have the cause decided on its merits, agreed that the judgment should be reversed, and that a venire facias de nova should be ordered. On a new trial, pursuant to such order, the jury have again found a special verdict; and what judgment is to be rendered *on that verdict, is the great question before the Court.
The verdict substantially finds, that Ebenezer Hawley, on the 29th of July, 1751, was seised in fee simple of the tenements demanded ; that he then made his will, and afterwards, on the 18th of August, 1751, died so seised ; that by his will he devised some portion of the tenements to his wife Bethiah for life; that he devised the residue, including the remainder expectant on his wife’s death, to his nephews Elisha Hawley and Joseph Hawley, but severally and in distinct parts, to have and to hold the parts devised to Elisha, to him, his heirs and assigns forever, on the conditions and, limitations after in his will mentioned; and to have and to hold the parts devised to Joseph, to him, his heirs and assigns forever, on the conditions and contingencies after mentioned in his will. The testator then proceeds — “And it is my will and pleasure, and I have made the foregoing devises and bequests with the provision and limitation that, if it should so happen that the said Joseph should decease, leaving no heirs of his body lawfully begotten, and the said Elisha, or any heirs by him the said Elisha lawfully begotten, then alive, that in such case all the devises and bequests of real estate herein before made to the said Joseph should be and remain to him the said Elisha or such his said heirs. And in case the said Elisha should decease, leaving no heirs of his body begotten, living the said Joseph or any heirs of his body lawfully begotten, in such case, all the lands herein before devised to the said Elisha shall be and remain to the said Joseph or such his said heirs. But in case both the said Joseph and Elisha should decease, leaving no heirs of either of their bodies begotten, then all the lands herein before given to the said Joseph and Elisha, or either of them, shall be and remain to the children of my brethren and sister who shall then survive.”
The verdict further finds, that on the death of the testator Ebenezer, his widow and his nephews Elisha and * Joseph respectively entered into and became seised, as the law requires, of the several estates devised to them ; — that afterwards, on the 24th of September, 1755, the said Elisha died seised, without leaving any heirs of his body, the said Bethiah and Joseph being then alive ; — • that on his death, the said Joseph entered into the estate that had peen so devised to the said Elisha, and became seised there *36 of, as the law requires ; —• that afterwards, on the 2d of March, 1781, Bethiah, the widow, died, and the said Joseph thereupon entered into and was seised of the estate devised to her for life, as the law requires ; — that afterwards, on the 10th of March, 1788, the said Joseph died without any heirs of his body, leaving nine cousins, the children of the brethren and sister of the testator, of whom Moses Hawley, the father of the plaintiffs in error, was one, who, on the said Joseph’s death, were his heirs at law, and also the heirs at law of the said Ebenezer, the testator.
The verdict further finds, that the said Joseph, at a Court of Common Pleas holden for this county in August, 1783, being then seised of the tenements aforesaid, and claiming to hold them as an estate tail, suffered a common recovery thereof, in due form of law, to his own use in fee simple, which recovery was duly executed ; — that afterwards, in September of the same year, the said Joseph, then seised of the tenements, as the law requires, made his will, executed in due form of law, which since his death has been duly proved, and therein, after reciting his former estate tail, and the common recovery suffered and executed, devised the tenements aforesaid to the inhabitants of Northampton, who are the defendants in error, in fee simple, and afterwards died so seised as aforesaid ; — that on the death of the said Joseph, the defendants in error entered into the tenements aforesaid, and were seised as the law requires, on whom Moses Hawley, the original demandant, entered, and thereupon the defendants reentered on him, and he thereupon sued his writ of entry.
The verdict further finds, that if the said Moses had right to recover any part of the tenements, as a devisee * under the will of the said Ebenezer, then the defendants disseised him of one undivided ninth part; but if the said Moses had right to recover any part, as an heir at law of the said Ebenezer, then the defendants disseised him of one undivided eighth part; otherwise that the defendants did not disseise him.
The plaintiffs’ claim is under an executory devise, to take effect on the dying of Elisha and Joseph, without issue living at their decease, they having estates in fee simple limited on this contingency, which in fact has happened. Or they claim in right of their father, Moses, who was a co-heir of Ebenezer, the original testator.
The defendants claim under the will of Joseph, on the ground that the plaintiffs’ right was a remainder expectant on the determination of an estate tail in Joseph, which he barred by the common recovery. The decision of these respective claims must depend upon the construction of Ebenezer Hawley’s will.
In construing a will, the testator’s manifest intention, to be col *37 lected from the whole will, and not from any detached passages, must prevail, so far as such intention is consistent with the rules of law; and when the particular intent cannot be executed, the general intent must direct the construction. As it is the interest of the commonwealth that lands should be transferable,, and not remain in any man or family unalienable, so it is one of the rules of law, which limit the power of devising, that perpetuities be not created. Therefore, in a devise in fee simple, on condition that the devisee do not aliene, the condition is void. Also in a devise of lands in tail, on condition that the devisee do not bar the entail, the condition is void. And in a devise to one and his heirs, remainder to another and his heirs, which is termed the limiting of a fee simple after a fee simple, the remainder is void, because it would defeat the right of alienation in the first devisee.
But the law will allow a devise of lands in fee simple to one, with an executory devise over to another on a contingency, * which must happen within the compass of a life or lives in being, and twenty-one years and a few months after. The twenty-one years are introduced to provide for the minority of a child born, and a few months are allowed to let in a posthumous child. But if the devise over is limited after the devise of a part, and not of the whole of the fee simple, the second devisee shall take by remainder, either vested or contingent, and not by executory devise.
As remainders are estates at common law, while executory devises can only be created by will, and are admitted from necessity, to execute the legal intent of the testator, it is an essential principle of law, in the construction of wills, to exclude executory devises, when the estate can pass as a remainder.
It is another important rule, in the construction of wills, to give to specific words of the testator that technical effect which has been derived from usage, and sanctioned by a series of decisions. Thus, in a devise to one and his heirs, we cannot consider the heirs as deriving any interest from the devise, although the testator might have contemplated such interest; but we are bound to consider the word heirs merely as limiting a fee simple in the devisee. In a devise to a man, and to the heirs of his body, these last words are a limitation of an estate tail; and if it descend from the devisee in tail, all the heirs of his body cannot take together, but only in succession — the eldest son and his issue, then the second son and his issue, and so on. But if lands are devised to one without any limitation, he has only an (- state for life ; although, undoubtedly, the testator, when he devises a farm or a house to one, supposes that he has given a fee simple.
And there are cases where the same words shall have different constructions, according to the nature of the property to which they *38 are applied, for the purpose of supporting the manifest general intent of the testator, when the particular intent is against law.
When lands and a chattel interest are devised to one, and if he die without leaving issue, * then a devise over, the devisee has an estate tail in the land, the words leaving no issue being, as to the land, understood as an indefinite failure of issue ; but as to the chattel interest, they are construed as leaving no issue at the death of the devisee. Now, the testator had the same particular intention in devising the land and the chattel interest • but to support his general intention, the same words have a different technical construction. (70) In the devise of the land, the words dying without issue being understood as an indefinite failure of issue, gave the devisee an estate tail, provided for his issue, and the second devisee could take a remainder, so that it became unnecessary to introduce an executory devise ; but as to the chattel interest, if an indefinite failure of issue was admitted, the first devisee would have the absolute property of the chattel, and the testator’s general intention in favor of the second devisee would be defeated. And with respect to the land, if dying without leaving issue is to be intended as without having issue at his death, the first devisee would have an absolute estate in fee simple on having issue ; yet he might aliene it from his issue, and the second devisee would have no ben efit from the devise.
This technical effect to be given to specific words is required only in similar cases ; for in a case where other words of the testator, or some particular circumstances, serve to give a different explanation to such specific words, a different construction ought to be admitted, so far as may be consistent with the rules of law.
The importance of adhering to a course of decisions, in the construction of wills, is manifest; for their authority has established a rule of property on which many estates depend, and to overturn them would introduce perplexing uncertainty, and might shake many titles resting on the faith of them. To this reason another may be added — that the rules of property should be so certain that, generally, men may know their titles without having recourse to expensive lawsuits. And when gentlemen learned in the, * law are consulted, they should have some guides to direct them in their advice.
To decide without subjection to fixed principles may be called discretion, but, in fact, it is power. The common law consists of maxims and principles resulting from the practical wisdom of ages, and we know of no other discretion it gives to a judge, in deciding *39 a novel question of property, than to apply those maxims and principles, by a sound analogy, to the new case. It is for the legislature to introduce new rules of decision.
With these general rules before us, we look into the will; and, as Joseph survived his brother Elisha, we will notice particularly the devise to Elisha, comparing it with the other parts of the will.
The devise to Elisha is to him, his heirs and assigns. This is an express devise of a fee simple to him ; and, as the devise to Joseph is in the same terms, the plaintiffs can have no claim under the will of Ebenezer, if these devises were absolute. But he makes them upon the conditions, limitations, and contingencies after mentioned. These expressions it would be unreasonably rigid to construe technically ; for a condition may, when necessary, operate as a limitation, a limitation may be on condition, and both may be contingent. This condition, limitation, or contingency is thus expressed : — In cáse Elisha should die leaving no heirs of his body, living the said Joseph, or any heirs of his body lawfully begotten, all the lands devised to Elisha shall be and remain to Joseph or such his said heirs. A similar provision as to the lands devised to Joseph, in favor of Elisha or the heirs of his body. —But if Joseph and Elisha should die leaving no heirs of either of their bodies, then all the estate shall remain to his cousins who shall then survive.
The effect of these provisions, as the plaintiffs contend, is, that estates in fee simple were devised to the two nephews Elisha and Joseph, and, at the decease of both, without leaving any issue at their deaths, the estates passed by executory devises to the cousins then living.
* But the defendants have argued, that by these devises the two nephews were tenants in tail, with cross remainders in tail, and a contingent remainder to the cousins then living.
No decision of a similar devise has been found, arid we must give such a construction as will best effect the general intention of the testator without violating any established rules. We consider the words dying without leaving heirs of his body as equivalent to dying without leaving issue. Now, it seems to be settled that a devise to one and his heirs, and if he die without issue, or without leaving issue, then to another, creates an estate tail in the first devisee, with a remainder over, when the limitation over can take effect as a remainder, unless there are other words to control this construction. (71)
This rule is founded on the reasonable consideration that the testator included the issue of the first devisee as objects of his *40 bounty ; and this bounty cannot be well effected but by vesting an estate tail in the first devisee ; in which case, the issue on his death will take in succession, and when the issue shall fail, the remainder will take effect in possession. But if by such devise the first devisee shall take a fee simple conditional, although on his death not then having issue, the second devisee might take by executory devise ; yet if the first devisee left issue, not only the claim of the second devisee would be defeated, but the issue could derive no benefit from the testator’s bounty, as their ancestor might alienate the estate at his pleasure.
We have observed that this construction is sometimes controlled by other parts of the will. On this head two cases have been decided. The case of Porter vs. Bradley, cited at the bar, was an express devise in fee simple to one, and if he died without leaving issue behind him, then to another; and it was holden that the words “ behind him ” confined the dying without issue to the death of the first devisee, and consequently that the first devise was a contingent * fee simple, and the devise over executory. — The other is the case of Sheers & Al. vs. Jeffery, also cited at the bar, where, after an express devise of a fee simple to one, and on his dying without issue, to another for life, it was holden that the testator intended the dying of the first devisee without issue at his death ; because it could not be supposed that the testator would give a life estate to a person in esse, after the indefinite failure of the issue of the first devisee. This case is the stronger, because the life estate was not given by express words, but resulted from construction, as there was no limitation of the estate given to the sec-, and devisee. Whether the presumption was necessary may well be questioned, as the age or infirmity of the first devisee might not give the testator any expectation that he would ever have issue.
Agreeably to this case, if the devise before us was to the nephews in fee simple, and if they died without leaving issue, then to the cousins for life, the first devise would have been a contingent fee, and the second executory. But if the devise to the cousins was of a life estate, it would not avail the claim of the plaintiffs under the will in this action, because their ancestor counted upon a seisin in fee simple, which this construction would not support.
But admitting that a fee simple was devised to the cousins, yet we are satisfied that, on a principle analogous to this last case, the original devise to the nephews of an express fee simple would have been reduced to a conditional fee, if the devise over had been if they died without leaving issue, and no provision had been made for the issue of the nephews. For the devise over is to such of hit cousins as should then be living. And the presumption that the *41 testator did not intend a ife estate to a person in esse, after the in definite failure of the issue of the first devisee, is not stronger than a presumption, that he did not * intend a contingent estate to such of his cousins as should be living after the indefinite failure of the issue of both his nephews.
And if the testator had not considered the issue of his nephews as an object of his bounty, but leaving them to the discretion of their fathers, had confined it to his nephews and to his cousins, we apprehend the whole intention of the testator might well and legally be executed by a contingent fee simple to the nephews, and a devise over to the cousins living at the death of both the nephews, without having at their decease issues of their bodies. But if the issue of the nephews are provided for, then a different construction must prevail. (72)
But were not the issue of his nephews intended by the testator to have some benefit from his devise to their parents ? Now, he has provided that on Elisha’s death without leaving issue, living Joseph or his issue, Joseph or his issue shall take the lands devised to Elisha; and a similar provision for Elisha’s issue in the lands devised to Joseph on his death without leaving issue, living Elisha or his issue. The testator has therefore expressly provided for the issue of his nephews in the lands respectively devised to their uncles. But as he clearly intended that the issue of each nephew should have the lands devised to his uncle on his dying without leaving issue, it must be inferred that he intended such issue should have the lands devised to his father leaving issue at his death; or we must absurdly suppose that the testator has protected the issue of each nephew against the alienation . of their uncle, and at the same time left them to be disinherited by their father.
The conclusion from this reasoning is, that the testator intended to prefer the issue of the nephews to his cousins, and that the estate given to each nephew respectively should go to his issue, if he left any. This being his clear general intention, the will must receive a construction which will execute it. But the rights of the issue cannot be secured, * without vesting an estate tail in their fathers. For we know of no rule of construction, by which a devise to one in fee, on the contingency of his leaving heirs óf his body, can be holden to be a contingent fee to the first devisee, and an executory devise to his issue. The devise of a contingent fee simple in the first devisee, and then over to the heirs of his body, being by the same instrument, must, by analogy to the ancient rule in Shelly’s case, be considered as vesting an *42 estate tail in the first devisee; and the issue cannot take as purchasers.
Upon the plaintiffs’ construction, the will is to be considered as devising first an estate in fee simple in the first devisee, then, on his death, to the heirs of his body, if he have any, ■—if not, then over to the cousins, which construction, it is said, is authorized by the case of Fonnereau vs. Fonnereau.
But this construction is not supported by that case. There the eldest son having a life estate, and his father, the testator, being seised only of a reversion, devised the estate to the heirs male of the first son, remainder to the other sons in tail in succession. — And it was holden, that as the first son took nothing by the will, his heirs male would take by executory devise, for nemo est hare< viventis, and consequently the devise to the second son was execu tory ; that on the death of the first son leaving heirs male, they would take the estate in succession, and the devise over to the second son would then have been a remainder. And as the first son left no issue male, the second should take by executory devise. — This case may be simplified by supposing the devise to be of a reversion to be to the heirs male of J. S., then living, remainder in tail to A. Now, as J. S. was living, as well the devise to his heirs male as that to A. are both executory ; and if the heir male of J. S. ever take the estate in possession, then the interest of A. is a remainder.
But in the case at bar, it must be considered as a devise to J. S. and to his heirs, with remainder to the heirs * of his body; in which case very clearly J. S. would take an estate tail, and the- heirs of his body, if he left any, would take by descent, and A. would take a remainder.
The only construction therefore, which will execute the manifest general intent of the testator, so as to include all the objects of his bounty, is by a devise to his nephews in tail, with cross-remainders in tail, and a contingent remainder to his cousins living when these estates tail should be spent. Upon this construction the nephews first take, then their issue in succession, then the survivor and his issue, and lastly the cousins.
But it is incident to an estate tail, to be barred by suffering and executing a common recovery, by which the rights of the issue, and of all in remainder or reversion, are extinguished. This is also the effect of the common recovery with single voucher, suffered by tenant in tail actually seised of the estate entailed.
We are therefore satisfied that Joseph Hawley, when he suffered the recovery, was seised of an estate tail, which was barred by the execution of the recovery, and a use in fee simple raised to him *43 self; and that the estate lawfully passed by his will to the defendants to hold in fee simple.
Neither Moses Hawley, the original demandant, nor the plaintiffs in error, his heirs, have now any claim to the tenements demanded, under the will of Ebenezer Hawley. And there does not seem to lave been any color of title in Moses Hawley, as an heir at law of Ebenezer, the testator, who certainly by his will devised all his interest in the lands, leaving no reversion in himself, unless the two nephews took estates in tail. And if they did, and the entails are legally barred, then that reversion is extinguished. And as we are of opinion, that the two nephews took cross-remainders in tail, Toseph, the survivor in possession, lawfully barred the reversion. The defendants in error must therefore have judgment, (a)

 1 Wlis. 48.-2 Strange, 1185, S. C.— 4 Bro. P. C. 504, S C

 1 P. Will. 667, Forth vs. Chapman. —• 3 Atk. 288, Sheffield vs. Lord Orrery. - 9 Vez. 606, Southhy vs. Stonehouse. — Cowp. 410, Geering vs. Hinton.

 Com. Rep. 373, Walter vs. Drew. — Hardw. 258, Wealthy vs. Bosville.— Doug 729, Winkles vs. Billington. —2 Saund. 380, Purefoy vs. Rogers.

 9 East, 382, Ellis vs. Ellis

a) [According to the laws of descent, in force when the will was made, the words ‘ heirs of his body lawfully begotten” included all the legitimate children of the testator. For all the children, male and female, were equally heirs of the body. Rob. Geo. 119,120. — Dyer, 179, b. — Roe vs. Aistrop, 2 Bl. 1228. — Co. Lit. 10, a, n. 3, 4. — Ed.]