## WOOD & AL. *v.* GRIFFIN.

Where there was a devise to J. W. and wife for their lives, and after their death to the children of J. W. for their lives, and the life of the survivors of them; and then to the grand-children of J. W. in fee, there being such grand-children at the time of the making of the will, and also at the death of the testator; it was *held*, that, whether the limitation over to the grand-children was void for remoteness or not, the children of J. W. took only a life estate.

Where one of the children of J. W. mortgaged all his interest in the estate, the others saying at the time to the mortgagee, that they would make no trouble about his cutting the timber on the mortgagor's share, it was *held* that the other children, after the death of the mortgagor, were not estopped by such declarations; the mortgagee being duly aware of the true state of the title.

Where such mortgagee enters upon the share so mortgaged, claiming the entire title, it is in law an ouster of the other tenants in common, and they may maintain trespass therefor.

Where such action is commenced by a husband and wife in her right, and she afterwards dies, the action may still be prosecuted by the husband.

Tenants in common for life are liable to the remainder man or reversioner, for an injury to the inheritance by a stranger or by part of the tenants in common; and having made satisfaction for the injury to such remainder-man or reversioner, they may recover over against the wrong doer the amount they have been compelled to pay; but until they have made such satisfaction, they can recover only for the injury to their possession.

TRESPASS, for breaking and entering the plaintiff's close in Auburn and cutting down and carrying away wood and timber on the 1st of December, 1861, with continuando to the date of the writ, which was Feb. 11, 1862.

Plea, the general issue, and statement that George Wood was tenant in common of the premises with the plaintiffs, and the defendant entered and cut, &c., as the servant of Wood; also that whatever was done on the land by the defendant was done with the knowledge and assent of the plaintiffs.

The following facts appeared on trial. Josiah Wood died seized of the premises in 1848. On the 6th of April in that year he made his

will, which was proved on the 20th of September, 1848, and which contained the following residuary clause : "As to the rest and residue of my real estate, I direct my executor to sell so much of the same *as may* as he may think necessary for the payment of my just debts, legacies, and expenses of administration, and the balance of said real estate, that may remain, if any, I give, devise, and bequeath the use and income of the same to my brother, Jesse Wood, for the support of him and his wife, Polly Wood, so long as they may live ; and, at the decease of the said Jesse and Polly, the use and income of said real estate, that shall remain as aforesaid, shall go to the children of my said brother Jesse and the survivors of them so long as any of them may live, and after their decease then I give, devise, and bequeath the said real estate, if any shall remain, as aforesaid, to the grand-children of my said brother Jesse and their heirs and assigns forever."

The *locus in quo* and other lands connected with it belonged to the said residue of Josiah Wood's estate, and were not sold by the executor under the will. Polly Wood survived her husband Jesse, and died in or about the year 1854. Jesse Wood left five children, Christopher D., George, Cyrus D., Josiah and Hannah, the last being married to one of the plaintiffs, Jonathan T. Stevens. On the 21st of February, 1861, Christopher D. Wood conveyed by quitclaim deed his share in the estate of his uncle Josiah to George Wood. On the 13th of March, 1861, George Wood conveyed the same premises in mortgage to the defendant Griffin to secure a note for $110.00. Christopher D. Wood died on the 14th of May, 1861. The plaintiff, Hannah B. Stevens, died since the commencement of this suit. A grandson of Jesse Wood was living and 32 years of age at the time of the trial.

On the 31st of December, 1861, the defendant and several other men entered on the *locus in quo* and were felling wood and timber there ; some trees had been cut there before, but there was no evidence that the defendant cut them or was personally present when they were cut. There was contradictory evidence upon the point whether the hands who were on the land on the 31st of December and afterwards, were employed and paid by the defendant or by George Wood.

Jonathan T. Stevens testified that in the fall of 1861, and before any cutting on the land he informed the defendant that Christopher was dead and that the land fell to the other heirs by the will ; that the defendant said he had a warranty deed of it and he should cut off the wood when he got ready ; that Stevens then told him he should prosecute him if he went on the lot to cut. There was evidence that Cyrus D. Wood and Josiah Wood forbid the defendant cutting on the land at the time when he was on the land with others cutting ; that in reply he said he had a warranty deed of the land and should cut down and carry off the wood and timber, and that he was good for all that was done there.

The defendant offered to show that after the death of Polly Wood the children of Jesse Wood, by a verbal arrangement without deed or other writing, divided the residue of the real estate devised to them for life into separate parts for the respective shares of the children ; that by this verbal arrangement the land in question was assigned to the share of

Christopher; and that the other children had cut off the wood and timber from their respective shares; but the court rejected this evidence, to which the defendant excepted.

It appeared that the sale from Christopher to George Wood was negotiated through an agent of Christopher, who was in a distant part of the country, and that the defendant proposed to furnish the purchase money and take security by mortgage of the land from George Wood to himself. It was understood by all parties that Christopher had only a life estate, and it was agreed between the defendant and George Wood that, in case the trade was completed and a mortgage given to the defendant, the wood and timber should be cut off and the mortgage debt paid out of the proceeds. There was evidence that the defendant hesitated to furnish the money on this security because he apprehended that the plaintiffs would object to the cutting off of the wood and timber; and that the plaintiffs, except Hannah B. Stevens, said to the defendant, or in his hearing, before the deeds were made and the money advanced on the mortgage that if the trade was completed and the wood and timber cut off they would make no trouble about it, or no fuss about it. On this point the evidence was contradictory. The defendant contended that on this evidence the plaintiffs were estopped to maintain this action. But the court ruled that, inasmuch as here was no dormant or concealed title, and no misrepresentation or suppression of any fact, it being understood by all the parties that no greater title than an estate for life was attempted to be conveyed, the evidence tended to show nothing more than a verbal agreement, which would be void under the statute. To this ruling the defendant excepted.

There was evidence that when the mortgage was given by George Wood to the defendant it was agreed that the wood and timber on the land should be cut off and the mortgage debt paid out of the proceeds, and that after the death of Christopher Wood and before any cutting the defendant called on George Wood to perform the agreement and cut off the wood and timber. After the wood and timber were cut, George Wood gave the defendant a bill of sale, the timber to be delivered at the mill, where it was sawed, and it was delivered there accordingly, and the proceeds applied by the defendant to the mortgage debt and on an unsettled account with George Wood.

Upon the point whether George Wood or the defendant employed and paid the men who were engaged in cutting down the wood and timber on the land, there was contradictory evidence.

The court instructed the jury that George Wood and the plaintiffs were joint tenants of the land in question, under the will of Josiah Wood; that if the defendant entered under George Wood asserting his right as a joint tenant and not denying the right of the plaintiffs as joint tenants, this action could not be maintained; but if he entered claiming in his own right or in right of George Wood the whole estate under the deed of Christopher to George or under the mortgage deed of Christopher to himself, this would in law be an ouster of the other joint tenants and a trespass, for which this action might be maintained. That if the defendant, holding a mortgage of the land left George

Wood in possession, and George Wood, without further authority from the defendant, cut the wood and timber, the defendant would not be liable in this action for such part of the timber as was cut before he himself entered; but that, if the defendant, having a mortgage of the land and a contract for the timber, called on George Wood to cut off the timber, and required him to do it in order to perform his contract, he would be liable for timber cut on this contract and pursuant to this requisition.

With respect to the cutting while the defendant was present and assisting, the court instructed the jury that if Wood employed the hands to cut the wood and timber in performance of his contract with the defendant, and the defendant went on in concert with Wood being in the same gang of hands, and was concerned with Wood in the cutting for the purpose of removing the wood and timber from the land, the defendant would be liable for all the cutting so done.

That what was said by the plaintiffs at the time when the conveyance was made by Christopher to George Wood might be regarded as evidence of a license by the plaintiffs to cut and carry away the wood and timber; that if there was a license this action could not be maintained for anything done under it and while it remained unrevoked; but that the plaintiffs might at any time revoke the license and the defendant would not be protected by the license for anything done after a revocation; that part of the cutting in this case might have been done under a license and part after a revocation; and, if so, the defendant would be liable only for such part of the cutting as was done after the revocation.

That this action having been commenced in the life-time of the plaintiff, Hannah B. Stevens, her right of action survived and might be prosecuted in this suit by her husband.

That the plaintiffs were entitled to recover three-fourths of the actual damage caused by the unlawful acts of the defendant in entering and cutting down and carrying away the wood and timber from the land.

That, for the purposes of this trial, the jury should take the limitations in the will of Josiah Wood to be valid in law, giving an estate for life to the children of Jesse Wood and the survivors.

That an actual possession of the land by the plaintiffs was not necessary to maintain this action.

The jury returned a verdict for the plaintiffs, which the defendant moves to set aside for error in the foregoing rulings and instructions of the court.

*S. N. Bell*, for plaintiff.

*Morrison, Stanley & Clark*, for defendant.

BELLOWS, J.    By the will of Josiah Wood he devised the use and income of the residue of his lands, of which the lands in question were part, to his brother Jesse Wood for the support of himself and his wife Polly during their lives, and after their death to the children of his

brother Jesse and the survivor of them, so long as they may live; and after their death he devises said real estate to Jesse's grand-children and their heirs and assigns forever.

After the death of Jesse Wood and his wife, one of their sons, Christopher D. Wood, on February 21, 1861, conveyed his share to George Wood, another son, by a quitclaim deed, and, March 13, 1861, George Wood mortgaged the same premises to the defendant, Griffin, to secure a note of $110.00; and Christopher died May 14, 1861. It appeared that the defendant, Griffin, on Dec. 31, 1861, with several hands entered upon the *locus in quo* and cut wood and timber thereon, but whether these hands were employed by the defendant or George Wood, the evidence was conflicting. It did appear, however, that after the wood and timber was cut, the said George Wood gave the defendant a bill of sale of it, to be delivered at the mill, where it was delivered accordingly, and sawed, and the proceeds applied on the said mortgage debt and upon an account with said George.

The first question respects the validity of the devise to the grand-children of Jesse Wood. A devise of the use and income of the land is a devise of the land itself; *McClure* v. *Melendy*, 44 N. H. 469, and cases cited; and therefore this is to be regarded as a devise of the land to Jesse Wood and his wife for life; then to the children of Jesse Wood, and the survivor of them for life, and then to the grand-children of Jesse Wood in fee, unless the devise to them be void because of remoteness, in which case the question might be made whether the heirs of the testator would take, or whether the children of Jesse Wood would take the whole.

The first inquiry is whether the devise to the grand-children of Jesse Wood is valid. It is urged by the defendant's counsel that this limitation over to the grand-children of Jesse Wood is void, because it violates the rule in regard to perpetuities; inasmuch as Jesse Wood might have had children after the testator's death, and those children might have had issue born more than twenty-one years after; and therefore the limitation could not take effect within the period of a life or lives in being at the death of the testator and twenty-one years and nine months after.

This seems to be a settled rule in regard to executory devises, and it applies whenever the estate is so limited that by possibility it may not vest within the prescribed period. If it may not, it is not good as an executory devise, even if the persons who are to take are actually born and qualified within the time allowed. 1 Jar. on Wills, 220, 223, 233, and 254, citing *Jee* v. *Audley*, 1 Cox 324, which is in point. To the same effect are 4 Kent's Com. 295, *268; *Leake* v. *Robinson*, 2 Merrivale 363, cited in 1 Jar. on Wills, 233; *Nightingale* v. *Burrell*, 15 Pick. 104; *Hawley* v. *Northampton*, 8 Mass. 3, 37; *Dennett* v. *Dennett*, 40 N. H. 503, and same case 43 N. H. 501.

In the case before us, as the devise would be construed to give the estate to the grand-children of Jesse Wood who were living at the termination of the life estate of the children. *Hill and Wife* v. *Rocking-*

*ham Bank & al.*, 45 n. H., 270, it is manifest that it might not take effect within the prescribed limits.

This, however, is to be regarded, not as an executory devise, but as a remainder, vested or contingent; and the question may arise whether, the same rule as to perpetuities will apply if 'the remainder be contingent. A remainder is a remnant of an estate depending upon a particular prior estate, created at the same time, and by the same instrument, and limited to arise immediately on the determination of that estate, and not an abridgment of it.   4 Kent's Com. 226 ; 2 Blk. Com. 166.   It is a vested remainder where there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the precedent estate ; and it is contingent, when it is limited to take effect either to a dubious and uncertain person, or upon a dubious or uncertain event.   2 Blk. Com. 169.

Upon the other hand, executory devises were instituted to support the will of the testator in cases where by the rules of law a devise of a future estate could not operate as a remainder, as in case of a remainder after a fee, which, although not good as a remainder, is valid as an executory devise.

In this case the fee is attempted to be limited upon an estate for life, and this under the circumstances is valid as a contingent remainder, unless affected by the rule in regard to perpetuities.   This rule has its foundation in the settled policy of the common law, which is opposed to those restraints upon the alienation of property which were supposed to be conducive to the power and grandeur of ancient families, and the rule must be considered as now well established.   Whether it is applicable to contingent remainders, as it is to executory devises, the authorities are not fully agreed.

The leading authority against its application to remainders is the opinion of Sir Edward Sugden, Lord Chancellor of Ireland, in *Cole* v. *Sewall*, 2 Conn. & Laws 344, quoted in 2 Jar. on Wills, 728.   In that opinion he admits that by the old law the doctrine of remoteness was applied to remainders, but that it is now done away with, and the rule applies only to springing and shifting uses and executory devises ; and he puts this distinction upon the ground that as to vested remainders there can be no remoteness ; and as to contingent remainders they must, by the rules of law, vest at the termination of the particular estate, or it cannot take effect at all.

But this, we apprehend, would be no safeguard against remoteness, because if the rule does not apply to remainders, a succession of particular estates may be limited to unborn persons ; and in this way inheritances be followed for many generations ; so long, in fact, as the persons to whom the estates were so limited came into being in time to take the estates, at the termination of the preceding particular estates ; and this, it is quite clear, would be in conflict with the policy which has dictated the rule in respect to perpetuities ; for this principle of that rule applies to contingent remainders equally with springing and shifting uses and executory devises.

Indeed, it would seem to be clear that the same principle, in substance,

was applied to contingent remainders at an early period, long before the institution of springing uses and executory devises. Co. L. 271, 6 Butler's note, 5; *Seaward* v. *Willock,* 5 East. 196; 2 Jar. on Wills, 226; Lewis on Perpetuities, 495.

If, in the case before us, the limitation *might* not take effect within the prescribed period, it is clear upon well established principles that it would be void for remoteness. Independent of the fact that at the time of making the will, and at the testator's death, there were living several grand-children of Jesse Wood capable of taking the remainder, this limitation would be void; but it is suggested, that, as there were persons in being capable of taking this estate, it must be regarded as a vested remainder, subject to open and let in after born children. If this be so, then it is clear that the children of Jesse Wood had only a life estate. If, on the other hand, the limitation to the grand-children is void, the question arises whether the estate becomes absolute in the children, or whether it goes to the heirs of the testator, as if in respect to the remainder, he was to be regarded as intestate. If it be held to go to the heirs in such case, it is obviously unnecessary to determine whether the remainder be vested or contingent, as in either event the children would have but life estates.

We propose, then, to consider first, the question whether the estate would go to the heirs upon the termination of the life estates of the children, in case the limitation over to the grand-children were to be held void for remoteness, or whether it would then become absolute in the children. Had the fee been given to the children upon a condition subsequent that was impossible or illegal, they would have taken the entire estate, according to the terms of the devise to them, but as if no condition had been expressed. See *Proprietors of the Church in Brattle Square* v. *Grant & al.,* 3 Gray 156, and cases cited; 4 Kent's Com. *130, and cases.

In this case the devise is of a life estate to the children of Jesse Wood, which would ensue to the benefit of such as were living at the decease of Jesse Wood and wife; and then to his grand-children generally; and we are of the opinion that the estate of the children cannot be enlarged to a fee by the fact that the limitation over was void, because we cannot gather any such intention from the will. To the children it is a devise of an estate for life and nothing more; and if the limitation over is void, the remainder must go to the heirs of the testator, as in respect to that he must be regarded as intestate. Had the remainder been limited to the issue of these children, the question might have assumed a different aspect; but as it is, it is a devise of a succession of life estates, and comes within the principle of *Seaward* v. *Willock,* 5 East. 198, before cited, which was a devise of successive life estates, the first to A. and then to persons not *in esse,* and it was held that A. took only a life estate, although those which succeeded him were void.

A similar doctrine was held in *Joslin* v. *Hammond,* 3 Mylne & K. 110, where a life estate was given to the wife, and at her death the whole property to be divided among the testator's children living at her death, and none survived her. It was decided that the intention being

to give the wife only a life estate, the testator, as to the rest, must be regarded as having died intestate.

We are, therefore, of the opinion that the children of Jesse Wood would take only life estates in any event; and this seems to have been the view of the court when this case was before it in June, 1863. This conclusion renders it unnecessary to determine whether the limitation over to the grand-children was valid or not.

The evidence of a verbal partition among the children was, we think, rightly rejected. *Whitney* v. *Swett*, 22 N. H. 10. It does not stand upon the same ground as the case of an agreed boundary line referred to by defendant's counsel; for there the agreement and making of the line is conclusive evidence that it is the true line.

We think also that the ruling of the court was right as to an estoppel founded upon the statement of the plaintiffs that they would make no trouble about cutting the timber, because, as the defendant fully understood the true state of the title, he could not have been misled in respect to it by the remarks of the plaintiffs. There was, therefore, no estoppel.

That he might have relied upon the assurance of the plaintiffs would seem to be probable, but having knowledge of all existing facts, there is not an estoppel. *Odlin* v. *Gove*, 41 N. H. 474; *Drew* v. *Kimball*, 43 N. H. 282.

The instructions of the court, that, if defendant entered into possession of the tract in question, claiming, either in his own right or under George Wood, the entire title, it would be in law an ouster of the other tenants, and a trespass, for which this action might be maintained, are, as we think, correct. 1 Ch. Pl. 10th Am. Ed. 79 & 156; *Chesley* v. *Thompson*, 3 N. H. 9; *Odiorne* v. *Lyford*, 9 N. H. 504; *Kenniston* v. *Leighton*, 43 N. H. 312.

The acts described clearly constitute an ouster. Stearns on Real Actions, 41. We think, also, that there was no error in the instructions as to a revocation of the license, and so as to the instructions that the action having been commenced in the life time of Hannah B. Stevens, her right survived to her husband, and the action might be prosecuted by him. *Little* v. *Downing*, 37 N. H. 355.

The remaining question is as to the rule of damages in this case. The plaintiffs were three of the four joint tenants, and the jury were instructed that the plaintiffs would be entitled to three-fourths of the actual damage caused by the unlawful acts of the defendant in entering and cutting down and carrying away the wood and timber from the land; and the question is whether the plaintiffs are entitled to include in their damages the full value of the wood and timber, upon the ground that they are liable over to the remainder-men or reversioner; or whether they are limited to damages for the injury to their possessory interest.

There can be no controversy that the cutting of the wood and timber by a tenant for life or a stranger, for the purposes indicated in the case, is waste; *Miles* v. *Miles*, 32 N. H. 147, *Dennett* v. *Dennett*, 43 N. H. 499; and it seems to be equally clear that the tenants are liable to the person having the immediate remainder or reversion for such waste,

whether committed by themselves or a stranger, or by a part of such tenants only. 4 Kent's Com. *77, 85 ; *Cook* v. *Champlain Trans. Co.*, 1 Denio 104 ; *Attersoll* v. *Stevens*, 1 Taunt. 200 ; Com. Dig. 517, Tit. Waste C. 4 ; Cruise's Dig. Tit. 18, c. 1, secs. 63, 20 and 54 ; Wash. on Real Prop. p. 116.

This liability rests upon the same principles of public policy that apply to the case of a common carrier ; and as the tenant is in possession and upon the spot, and authorized to bring suit against any who may violate his possession, it is assumed that it is his duty and in his power to protect the estate against everything but the act of God and the public enemies. It seems also to be settled, that, although the remainder-man or reversioner cannot maintain an action of waste against a stranger, yet he may maintain an action on the case in the nature of waste for an injury to his reversionary interest, while at the same time the tenant may sue for the injury to his possession. 1 Ch. Pl. 63, and cases cited ; *Jesser* v. *Gifford*, 4 Burr 2141 ; *Bedingfield* v. *Onslow*, 3 Lev. 209 ; 1 Ch. Pl. 140 ; *Randall* v. *Cleaveland*, 6 Conn. 328 ; *Chase* v. *Haseltine*, 7 N. H. 176.

It may also be considered as established, that, while the tenant is answerable to the remainder-man or reversioner for waste done by a stranger, such stranger is liable over to the tenant. 4 Kent's Com. *77, 85 ; 2 Saund. 259, and cases cited.

The precise question, then, is, whether in an action of trespass *quare clausum fregit* by the tenant against a stranger, he can recover damages for the injury to his possession, and also for the injury to the inheritance, without there having been any recovery against him by the remainder-man or reversioner, or any satisfaction made by him in any form.

In 1 Ch. Pl. 63, it is laid down that "the tenant may support trespass against a stranger for an injury to his possession ; and the immediate reversioner may at the same time support an action on the case, if the injury were sufficient to prejudice his right and interest ; and a recovery by one will be no bar to an action by the other."

In *Attersoll* v. *Stevens*, 1 Taunt. 190, Chambers, J., holds that when different persons are entitled to compensation for an injury to each by the same act, a compensation to one is no bar to the action of the other ; and this he applies to the case of injuries to the tenant and to the reversioner.

In *Bedingfield* v. *Onslow*, 3 Lev. 209, which was case for an injury to plaintiff's land by penning back the water of a rivulet, the defendant pleaded that one Stedman was in possession of the land of the plaintiff under a lease from his father, and that he, the defendant, paid Stedman twenty shillings, which he accepted in satisfaction of the trespass ; to which the plaintiff demurred, and the plea was held bad, upon the ground that, in respect to the prejudice done the reversion, the plaintiff may maintain an action, and Stedman another in respect of the possession ; and so another in respect of the *shade, shelter* and *fruit* of the trees, for the same trespass ; and the satisfaction given to one is no bar to the other ; and to this point is cited 19 H. 6, 12 ; 12 H. 6, 4 ;

2 Roll. Abr. 551, and Croke Elis. 55; see also *Fay* v. *Brewer*, 3 Pick. 205, note 2.

In *Davis* v. *Jewett*, 13 N. H. 91, it is laid down that for an injury to land in possession of a tenant, both the tenant and reversioner have separate actions for their several damages; and to the same effect is Co. L. 57 a., Hargrave & But. note 2; 2 Wash. on Real Prop. 393.

This, indeed, is apparent from a consideration of the nature of the interests held by each; the tenant having the right to the possession of the land and to the enjoyment of the *shade* and *fruit* of the trees, and the reversioner, the right to the trees themselves, subject to this use by the tenant; and therefore when they are cut down by the tenant unless for necessary fuel, repairs, or perhaps clearing of the land in proper cases, or by a stranger, they become at once the property of the reversioner absolutely, for which he may maintain trespass or trover against any one who may remove them. *Bulkley* v. *Dolbrace*, 7 Conn. 232; 2 Washburne on Real Prop. 393.

In an action by the reversioner for an injury by a stranger, it is necessary to allege the plaintiff's interest in the land, and that the acts complained of affected the inheritance; *Davis* v. *Jewett*, 13 N. H. 91, and cases cited; otherwise the action could not be maintained, and there would be strong ground for contending that the same principle would require that the tenant, when he seeks to recover of a stranger for the injury done to the reversion, should also set out such claim and state the facts upon which it is founded. If he has already been compelled to pay the reversioner for the injury done to him, it would seem that this should be stated, and that the tenant's claim in respect to that part of the injury should be limited to the amount so paid, for to that extent only is he injured.

The suit by the tenant may or may not be designed to recover for the injury to the inheritance as well as to the possession, and it is therefore obviously important that it appear from the declaration whether it does or not; and this accords too with the general rules of pleading.

It is clear from the adjudged cases, that the claims of the tenant and reversioner can be separated, that they are in fact distinct, and that each may maintain a suit for the injury done to him, and that both may be pending at the same time. How, then, can the tenant include in his damages the injury to the reversion? If he can in any case, how is the defendant to avail himself of the fact that another action is pending by him in remainder or reversion?

Again, there is no necessity for arming the tenant with such power. If he is entitled to recover for the injury to the inheritance, whether he has satisfied the reversioner or not, his recovery must be a bar to a suit by the landlord, and still the trespasser might avail himself, by way of defense, of a license, or admission, by the tenant which might in effect defeat the landlord's claim against such trespasser, and besides the landlord might find his claim against the trespasser defeated by the result of a suit prosecuted without his assent, in a manner opposed to his wishes, or by his inability to obtain from the tenant himself the fruits of the suit against such third person.

The fact that the tenant is answerable for the injury does not, we think, furnish an adequate reason for sanctioning such doctrines. Where waste is committed by cutting down timber trees by a stranger, the property in them at once passes to the landlord; and he may take them or maintain trover for them; and there surely can be no propriety in holding that the tenant also could have the same remedy, for he has no property whatever in them.

If the tenant has been compelled to satisfy the landlord for the injury by a third person, he may have his remedy over, but, until then, we think he must be confined to damages for the injury to the possession.

This case is unlike the cases of goods in the hands of carriers, factors, wharfingers and other agents, who are responsible for them to their principals, because of the different rules which apply to lands and goods. In the case of lands in the possession of a tenant, his interest and the interest of the landlord are distinctly marked and easily separated; and for injuries to either there are appropriate and distinct remedies; while in respect to goods there is, in general, no such distinction; and such is the effect given by the law to the fact of possession that either trespass or trover may be maintained against one who wrongfully deprives another of such possession without any injury as to the ultimate title.

But beyond this, the authorities, so far as we have any, are opposed to the claim of the tenant to recover damages for an injury to the inheritance until he has first satisfied the landlord; and there is nothing in the state of the law in respect to suits by agents, carriers, and others in possession of goods, that would induce us to extend it to a case like the present.

We think, therefore, that on this ground the verdict must be set aside unless plaintiff will reduce the amount of the verdict to nominal damages.