JOSEPH F. NASON, executor, in·equity, *vs.* FIRST BANGOR CHRISTIAN CHURCH, *et als.*

FIRST BANGOR CHRISTIAN CHURCH *vs.* JOSEPH F. NASON, executor.

Penobscot, 1876.—August 8, 1876.

*Equity.   Executors and Administrators.*

A testator bequeathed property to aid in the erection of a house of worship for the first church of the Christian denomination in Bangor, subject to the conditions that the church be legally organized within ten years, and, before it avails itself of the appropriation, own a lot free from incumbrance on which to erect their house, within one mile of Kenduskeag bridge.  Two churches of that denomination organized in some form within the time specified; the first, which was not recognized by the general conference, did not own a lot, nor claim the legacy.  The organization of the claimant church was recognized by the general conference and they purchased the requisite lot, and demanded the legacy.  In a bill in equity seeking a construction of the will, and direction in the disposition of the legacy, it was *held*, that the bequest was valid, and ordered that it be appropriated under the direction of a trustee to be appointed by the court at *nisi prius*, to aid in the erection of a house of worship upon the lot owned by the church.

The general doctrines of *Sewall* v. *Cargill*, 15 Maine, 414; *Preacher's Aid Society* v. *Rich*, 45 Maine, 552; *Tappan* v. *Deblois*, id., 122; and *Howard* v. *Am. Peace Society et als.*, 49 Maine, 288, are re-affirmed and applied to the facts here presented.

Extracts from the records of the Maine Eastern Conference of the Christian Church and those of the First Bangor Christian Church are legally proper to be considered by the court.

Where a testator made a bequest under certain conditions "to aid in the erection of a house of worship to be under the control of the First Christian Church in Bangor," *held*, that even if the conditions were performed, the action here brought would not lie in behalf of the church against the executor for the payment of the bequest.

ON REPORT.

Two cases, an action at law, and a suit in equity, are presented together to the law court.

The bill in equity asks the construction of the will and aid in the disposition of the assets of Samuel S. Nason, who died July 3, 1865, leaving brothers, but no widow or lineal heirs.   The will, after making provision for the testator's wife in case she survived him, and valid legacies of $200 to his brother William H. Nason, and $100 to Mount Hope Cemetery Corporation, gave the residue

of his property, together with his wife's portion, in case she did not survive him, some $4,000 in all, at the date of the bill, January, 1876, to aid in the erection of a house of worship in the city of Bangor, to be under the control and used by the first Christian church, or the first church of the Christian denomination in Bangor, subject to the condition that the church within ten years be legally organized, and own a lot free from incumbrance on which to erect their house within one mile of Kenduskeag bridge.

Within the ten years, two societies of the denomination called "Christian" were organized in some form in Bangor, the first called the "First Christian Church in Bangor" March 2, 1871, not recognized by the conference, and not performing the conditions, or claiming the legacy; the other, the claimant church, adopted for their name the "First Bangor Christian Church," commenced their organization later in the same year, and completed it as indicated by their own records and the records of the Maine Christian Conference in that or the next year, and also attempted within the time a statute organization in which counsel pointed out certain informalities, as want of seal in the warrant, and want of requsite oaths of office.

Some of the foregoing, with other material facts, are stated in the opinion.

In the action at law the church sued the executor for the same legacy.

*A. W. Paine*, for the executor.

*L. Barker & L. A. Barker*, for the church.

BARROWS, J. In the first named process, the plaintiff in equity seeks under the seventh clause of § 5, c. 77, R. S., to obtain,

I. A construction of the will of Samuel S. Nason who died July 3, 1865, leaving a will which has been duly admitted to probate, and of which the plaintiff is the duly qualified executor; and

II. In case a valid trust is thereby created, directions from the court as to the mode of executing the same.

The item in the will under which the questions arise runs thus:

"I give and bequeath the balance of my property, be it more or less, to aid in the erection of a house of worship in the city of

Bangor, to be under the control and used by the first Christian church (or first church of the Christian denomination) in said Bangor.

This bequest is subject to the following conditions, viz : Said church must be legally organized and own a lot on which to erect their house ; said lot must be within one mile of Kenduskeag bridge, and the society or church must own it free from incumbrances before it avails itself of this appropriation. Ten years from the time of my decease, I allow said church or society for its organization; during which time the amount bequeathed to it shall be at interest, and the interest as it accumulates be added to the principal for the benefit of said church or society.

\*    \*    \*    \*    \*    \*    \*

In the event that no church or society of the Christian denomination shall be in existence in Bangor within the time specified by this section, or should said church or society fail to comply with the conditions of this bequest, then it is my will that the sum bequeathed to them, be it more or less, be given to the New England Christian Home and Foreign Missionary Society, to remain a permanent fund in the hands of said society forever, the interest to be expended annually to sustain a missionary of the Christian denomination in Aroostook county, Maine ; said missionary employed must be a man who is not addicted to the use of tobacco in any form whatever and one who is denominationally a Christian."

The bill alleges that after the death of the testator, viz : on the second day of March, 1871, a church of the Christian denomination was organized and established at Bangor, and was known as the First Christian Church in Bangor, was located at Bangor though embracing citizens of Bangor and the adjoining town of Hampden ; but that it has never purchased any lot of land for a house of worship according to the provisions of the will, does not propose so to do, and consequently does not claim any interest in the bequest. That subsequently, some time in the year 1871 or 1872, another body of persons in Bangor, residing principally in a locality known as West Bangor or Barkersville, met together and claim to have been organized as a church of the Christian denomination, adopting for their name the "First Ban-

gor Christian Church;" but the plaintiff has no means of determining whether their organization is or is not legal. But this church claims to be legally organized and to be the first church of the Christian denomination in Bangor; and he is informed that they have purchased a proper lot for a church building to meet the conditions in the will, and more than ten years after the decease of the testator they made a demand on him for the payment of the money. The plaintiff asks that they may be put to the proof of the legality of their organization, and that the court will determine, under these allegations, and evidence to be introduced by the parties whether the "First Bangor Christian Church" is entitled to receive the benefit of the residuary clause in the will, and if not, who is. And, whether, if it is so entitled, the money shall be paid to them at once and they be entrusted with its expenditure, or by whom it shall be expended for the object named in the will, and that the court will advise him generally as to the validity of the bequest and the proper and legal mode of executing the trust. The heirs of the testator and the three societies above mentioned are made parties respondent; and the case is submitted upon an agreed statement of facts and evidence, which admits the truth of the allegations in the bill except as they may be modified by the proof offered to establish the legal organization of the First Bangor Christian Church and its right to the bequest, consisting of copies from the records of the Maine Eastern Conference of Christian Churches and from the records of the claimant church and the further distinct admission "that a deed of a lot was made, delivered and recorded, as stated in the bill, and that the title still remains as made by the deed free of incumbrances; and that the claimant church was organized and admitted into the Maine Eastern Conference of Christian Churches, according to the established usages of the Christian denomination, said conference and the churches constituting the same (other than appears in this case) not being incorporated or organized under the laws of this state."

Hereupon it is objected against the right of the claimant church, 1, that the only church that could ever have fulfilled the conditions of the will was the one organized March 2, 1871, because that alone answers the description of the first Christian church in Ban-

gor; and 2, that this claimant church, though it has obtained a deed of a lot answering the calls in the will, fails in several particulars to show a legal organization.

The general principles and rules which will govern this court in determining the validity and construction of such bequests as the one before us are laid down in *Sewall* v. *Cargill*, 15 Maine, 414. *Preacher's Aid Society* v. *Rich*, 45 Maine, 552. *Tappan* v. *Deblois*, id. 122. *Howard* v. *American Peace Society et als.*, 49 Maine, 288. A reference to these cases will suffice without a re-statement of the doctrines there found.

I. Unmistakeably, the prime object of the testator in the residuary clause was to devote the remainder of his property to aid in the erection of a house of worship in a particular locality for the use of those belonging to a specified denomination of protestants there; provided that, within ten years from the time of his decease, there should be a legally organized church capable of holding and controlling property, and owning free of incumbrance a lot of land within the designated limits on which to place the building. Is this object to be defeated, and the limitation over to take effect, because there was an organization which was known as the First Christian Church in Bangor a few months prior in date to the claimant church, but which the case finds has never undertaken to fulfil the conditions of the bequest, and though made a party to this proceeding sets up no claim thereto?

It is suggested at the bar that the case is analogous to those which not unfrequently arose when this state was a part of the commonwealth of Massachusetts, under grants in which lots were reserved for the first settled minister, where it was held that the title vested when the first minister was settled; and to those in which the right of the first parish to the town's church property as against all subsequent organizations has been sustained.

The last mentioned class of cases turned mainly upon peculiar statute provisions, commencing with those of Mass. Statutes of 1786, c. 10, §§ 4 and 5; and in the others it will be noticed that the lots were unconditionally reserved for the first settled minister: so that these cases throw little light upon the question before us, which is whether the devise must necessarily be construed as

so far attaching to the church first organized, but taking no steps toward performing the conditions, as to defeat the claim of a church originating a few months later but otherwise meeting the calls of the will. The stricter construction will defeat the prime object of the testator's bounty : and under the circumstances here presented we think that the mere shadow of a name ought not to prevail so as to divert his gift from the use to which it was his first desire that it should be put.

It is to be borne in mind that this gift is not to the church itself, but to aid such church in the erection of a house of worship in a particular locality, for the advancement of the cause which the testator held dear, for the enlightenment of the ignorant and the reformation of the vicious in that vicinity.

We think it may be fairly held that he intended thus to aid the first church of the specified denomination, which within the prescribed time should take the steps which he required to secure the permanent ownership and control of the house for the use of the favored sect.

It is familiar doctrine that in the construction of wills "the court will place themselves, as far as practicable, in the position of the testator, and give effect to his leading purpose and intention, as indicated by the words of the will, construed with reference to all attending circumstances." Redfield on Wills, vol. 1, *436, 437.

. If the general intent be clear the will must receive such a construction as will execute it, and if it is impracticable to give effect to all the language of the instrument expressive of some particular intent, the particular must yield to the general intent and purpose. *Hawley* v. *Northampton*, 8 Mass. 3.

The use of the descriptive phrase "first Christian church (or first church of the Christian denomination) in said Bangor" will not preclude the "First Bangor Christian Church," which alone meets the essential conditions of the bequest, from receiving the benefit of it, under the circumstances here disclosed.

Extracts from the records of the "Maine Eastern Conference of Christian Churches," and from the records of the claimant church are by the agreement of the parties, expressly "made a part of the case ;" and this would suffice to make them "legally proper to

be considered by the court," even if they could not be so regarded, if offered and objected to. Made a part of the case as they are without objection, the authenticity and correctness of these records must be deemed to be conceded; and it cannot here and now be objected, if it could have been at any stage of the proceedings, that they are of "no more legal force, than those of a sewing circle or a ward caucus."

It is not to be assumed, that without this, upon an issue whether a certain church was or was not duly and regularly organized, and in good standing and fellowship with the churches of the denomination to which it claims to belong, the records of so important an ecclesiastical body as the "Maine Eastern Conference of Christian Churches" would be rejected.

Touching the church records, the remarks of Shaw, C. J., in *Sawyer* v. *Baldwin*, 11 Pick. 492, 494, seem to be appropriate, and they were made under statute provisions similar to our own. He says: "We must take notice of a usage so general as that of a church to keep a record. It is also to be considered, that the law recognizes the existence and organization of a church, as an aggregate body, takes notice of its acts and doings, and annexes thereto various civil rights and powers. It is in virtue of this organization and these proceedings, that deacons are elected; and being thus elected, they are empowered and qualified by the law to sue as a corporation. The law therefore does, by necessary implication, authorize and require a church, by a proper officer, to keep some record of its acts." He concludes, therefore, in the case he was considering, that a record of the proceedings of the church of B. was kept; "and as the book produced bears all the marks of being such a record, and as no other was kept, we are satisfied that the book in question is the record of that church." A bishop's register is evidence of the facts stated in it. *Arnold* v. *Bp. of Bath and Wells*, 5 Bing. 316; and so are vestry books; *Rex* v. *Martin*, 2 Camp. 100; and chapter house as well as parish registers, and other documents of a public nature, "notwithstanding," as Professor Greenleaf remarks, "their authenticity is not confirmed by those usual and ordinary tests of truth, the obligation of an oath and the power of cross-examining the persons on

whose authority the truth of the documents depends." Confidence is reposed in them, partly because they have been made by authorized and accredited agents appointed for the purpose, and partly because of the publicity of their subject matter. Greenleaf's Ev., vol. I, §§ 483, 484, 1st ed.

We see no good reason why the records kept by a permanently organized ecclesiastical body having regular public sessions, like the Maine Eastern Conference should not be competent evidence of their acts and doings wherever such acts and transactions are relevant to the issue.

The proof is satisfactory that the church organized March 2, 1871, was not recognized by the Maine Eastern Conference of the denomination to which it claims to belong; that a committee of that conference, in September, 1871, after a hearing of parties interested, determined that there is no "First Christian Church in Bangor;" that thereupon the conference chose another committee to visit Bangor and organize a church, and this was done, and in pursuance of this action of the conference, it is both proved and admitted that the claimant church was organized and admitted into the Maine Eastern Conference of Christian Churches according to the established usages of that denomination. It is to all practical intents and purposes, as declared by the conference September 10, 1872, the first and only Christian church in Bangor, *i. e.*, the first and only church of that denomination there.

II. What did the testator intend by the requirement that it should be "legally organized?"

It is suggested at the bar that he meant a religious society or parish incorporated in the mode prescribed by R. S., c. 12, §§ 1–5. A movement seems to have been made by the claimant church to secure such an incorporation.

Various objections are suggested to the proceedings.

We do not think it necessary to determine their validity.

All that the testator seems to have had in mind as essential, was the organization of a church according to the established usages of the denomination, provided that such organization was sufficient to enable them to receive the conveyance of a lot and to protect the property.

Our laws like those of Massachusetts recognize the organization and existence of churches as aggregate bodies, distinct from parishes or religious societies ; and they expressly declare the church wardens of episcopal churches, the stewards or trustees of the methodist episcopal church, and the deacons of all other protestant churches to be so far corporations as to take in succession ; all grants and donations of real and personal estate, made either to their churches, or to them and their successors ; and they provide all the necessary powers to enable them to hold, transfer and protect the property granted to their churches or for their use by suit or otherwise. R. S., c, 12, §§ 19, 20, 21.

By the regular organization of the church in conformity with the established usages of the denomination, the election of a deacon and the deed of the lot to the church, in connection with the other admitted facts in the case, we think all was accomplished which was necessary under our laws and the will of the testator to make good the right of the church to have the bequest appropriated to aid in the erection of a house of worship upon their lot.

III. The suit brought by the claimant church against the executor cannot be maintained.

Even if it were clear that the proceedings to secure an incorporation as a religious society were valid and complete so as to enable the plaintiffs to sue in the corporate name, the terms of the bequest are not such as would enable them to recover the money from the executor in such a suit.

It is not a direct bequest to the church or society, but the language used looks to the expenditure of the fund for the object designated through the intervention of a trustee. The fund is not to go into the possession of the church, but to be used to aid in the erection of a house of worship to be used and controlled by them. A nonsuit must be entered.

IV. Whenever any interest in the nature of a trust, or any power or duty implying a trust is created by a will and there is no special designation of the executor or any other person as trustee, nor any provision in the will for the appointment of a trustee it devolves upon the executor as such to administer the estate according to the provisions of the will. *Groton* v. *Ruggles*, 17 Maine, 137. *Pettingill* v. *Pettingill*, 60 Maine, 412.

But if it appears to be inconvenient or needlessly expensive for the executor to perform the duty the court on application will appoint a trustee.

It is suggested by the counsel for the executor that he resides in a distant part of the state and does not desire the appointment, but seeks, under the statute, directions from the court as to the discharge of his duty in the premises.

Upon consideration of the whole case before us, he is directed to settle his final account of administration in the probate court including therein the reasonable expenses and costs of the several parties in this litigation which he is to pay out of the estate ; and make over the remainder to a trustee to be appointed by the court at *nisi prius*, such trustee to superintend the expenditure of the same in aid of the erection of a house of worship upon the lot owned by the First Bangor Christian Church, and to render his accounts of such expenditure to the court.

*Decree accordingly.*

APPLETON, C. J., WALTON, DICKERSON, VIRGIN and PETERS, JJ., concurred.